```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 12-23749-Civ-MORENO
                          MAGISTRATE JUDGE P.A. WHITE
```

ADOLFO NAVARRO,                        :

    Petitioner,                        :

v.                                     :     <u>REPORT OF</u>
                                               <u>MAGISTRATE JUDGE</u>
MICHAEL D. CREWS[1],                   :

    Respondent.                        :
_____

## I. Introduction

Adolfo Navarro, who is presently under supervised release following his release from custody subsequent to the filing of the instant petition, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction in case number F06-38802 from the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus, a memorandum addressing the limitations period, and the Respondent's response to an order to show cause with appendix of exhibits.

---

[1]Michael D. Crews replaced Kenneth S. Tucker as Secretary of the Florida Department of Corrections and is substituted as party pursuant to Fed.R.Civ.P. 25(d).

1

## II. Procedural History

The petitioner was charged with first degree trafficking in cannabis, grand theft and use or possession of drug paraphernalia. (DE# 14-2, p. 17-21). The grand theft and drug paraphernalia charges were subsequently dropped. The petitioner entered a plea f not guilty.

Prior to trial the petitioner filed a Motion to Suppress Tangible Evidence and Statement. (DE# 14-2, p. 29-46). In this motion the petitioner argued that (1) the police conducted an illegal stop without reasonable suspicion; (2) his consent to search was not voluntary as it was the result of police coercion; and (3) his statements were the result of the alleged illegal conduct of the police. An evidentiary hearing was conducted on the petitioner's motion. (DE# 15-5, p. 10-126).

At the evidentiary hearing the court heard testimony from a police officer, the petitioner's wife and the petitioner. The officer testified that he received an anonymous tip that the petitioner's home was being used as a grow house for marijuana. (DE# 15-5, p. 14). As he approached the petitioner's home the officer was dressed in tactical attire that clearly identified him as police. He was accompanied by other detectives. (DE# 15-5, p. 15). He was not blocking any vehicles in a driveway. (DE# 15-5, p. 15). The officer, and one other, approached the front door and a special agent lingered in the back. (DE# 15-5, p. 16). As they approached the house the petitioner's wife was coming out. The officer identified all of himself and explained the reason they were there, at which point the petitioner's wife called out for him. (DE# 15-5, p. 16). The petitioner came to the door and the door remained open. (DE# 15-5, p. 16). The officer then explained to the petitioner that they were there to investigate a poss grow

house. (DE# 15-5, p. 18). The officer testified that he never approached the house or knocked on any window. (DE# 15-5, p.18). The officer could clearly smell the odor of live marijuana as he spoke to the petitioner. (DE# 15-5, p. 18). When advised of their purpose for being theere, the petitioner put his head down and said "it's inside" and invited the officers inside. (DE# 15-5, p. 19). However, prior to entering the premises, the officer read the petitioner his Miranda rights and had the petitioner read and sign a consent to search form. (DE# 15-5, p. 20). The petitioner was calm during the encounter. (DE# 15-5, p. 24). The petitioner's wife was also advised of her Miranda rights and given a consent to search form, which she read and signed. (DE# 15-5, p. 21). Approximately ten minutes elapsed from the time of initial contact with the petitioner's wife to the time when the petitioner consented to the search. (DE# 15-5, p. 23). Thirty minutes elapsed before the petitioner's wife signed the consent. (DE# 15-5, p. 25).

The officer testified he never told the petitioner that if he did not sign the consent form then a search warrant would be obtained or that he would not arrest his wife if he consented to the search. (DE# 15-5, p. 23). The officer also testified that he made no such statements to the petitioner's wife. (DE# 15-5, p. 24).

After the consent was obtained the petitioner took the officers inside the home and showed them where the marijuana was being grown. (DE# 15-5, p. 23-24). There was a large plant in the home and additional plants and a lab behind a sheet rock partition. (DE# 15-5, p. 24).

The petitioner's wife testified that she as she left her home she was approached by two officers stating they had received an

anonymous tip that the house was being used as a hydroponics lab. (DE# 15-5, p. 56). When she first saw the police she screamed out to her husband by calling his name and announcing that the police were there. (DE# 15-5, p. 69). She testified that her son was in the car waiting for her. She testified that she closed the front door to the house as she left. (DE# 15-5, p. 57). She testified that a railing covers the front porch. (DE# 15-5, p. 57). She claimed that two police vehicles blocked the driveway. (DE$ 15-5, p. 58). She testified that she told them she did not know anything about a grow house, and that they needed a warrant to search the house. (DE# 15-5, p. 58). She testified the officers told her if she did not consent to a search they would get an order and come back with a SWAT team and arrest her and her husband. (DE# 15-5, p. 58).

After the police spoke to her they went to the door and knocked hard on the window to the bedroom, telling her husband to come out. (DE# 15-5, p. 59). When her husband came outside she was inside her vehicle and could not hear what her husband and the officers were talking about. (DE# 15-5, p. 62). After signing a consent to search, the petitioner's wife left the scene. (DE# 15-5, p. 62). She claimed that she signed the consent after being threatened with arrest. (DE# 15-5, p. 64).

The petitioner testified that he was awakened by the someone hitting his window and yelling, "Javier, come out. It's the police." (DE# 15-5, p. 71). Neither his wife or child were in the house at the time. (DE# 15-5, p. 72). As he was leaving the house the door was closed. (DE# 15-5, p. 74). He encountered a police officer who told him there was grow house there and to let him inside. He refused to let the officer in. (DE# 15-5, p. 74). According to the petitioner, the officer then said if he did not

4

sign the order he would send someone to a judge for an order, come back and arrest both him and his wife. (DE# 15-5, p. 74). He testified that the officer gave him a man's word that if he signed the consent his wife would not be arrested. (DE# 15-5, p. 75). The petitioner testified that based on those options he signed the consent, and that his decision was not influenced by the number of officers present.(DE# 15-5, p. 75, 78). He acknowledged that the police did not yell at him and that his conversation occurred ten feet outside his home. (DE# 15-5, p. 78-80).

The trial court denied the motion to suppress. (DE# 14-3, p. 5-8). The court first found that there was a legitimate police encounter outside the petitioner's home resulting from a tip that narcotics were being sold from the home. The court found there was no constructive entry in that it was unrefuted that the officers did not enter the petitioner's home until after he had been advised of his Miranda rights and signed a consent to search.

The court found that the petitioner provided a valid consent to search and that the petitioner's will was not overborne by the officers. The court also found that the petitioner understood his legal rights, was alert, and understood what was transpiring. He was aware that the police could not conduct the search without a warrant unless he consented and that the could have required the police to obtain a lawful warrant. The petitioner, who knew there was marijuana in the house, elected to consent to the search to avoid the arrest of his wife. The court noted that consent was signed shortly after the police arrived and the entire encounter was brief and occurred outside the home. The court further noted there was no evidence of overwhelming show of police force and the petitioner had testified that he did not feel forced or threatened into giving consent to the search.

After a jury trial the petitioner was found guilty of trafficking in more than 25 pounds and less than 200 pounds of marijuana and sentenced to 5 years imprisonment. (DE# 14-3, p. 132-134). Two relevant issues arose during trial.

Prior to closing argument the petitioner requested a special jury instruction regarding the weight of the marijuana plants. (DE# 15-4, p. 3-7). The petitioner was seeking a special instruction that the weight of the water in the plants not be considered in determining the total weight of the plants. The trial court denied the specially requested jury instruction, finding there was no evidence to support it. (DE# 15-4, p. 9-10).

In closing argument the prosecutor stated that it was a reasonable inference that this was not the petitioner's first time doing this.(DE# 15-4, p. 22). This statement was made after the prosecutor, in addressing the credibility of the petitioner's testimony, had pointed out that th petitioner had testified that he was just watching the house and being paid, claiming that this was the first time he had done this. The petitioner objected and moved for mistrial. (DE# 15-4, p. 22) The motion was overruled. (DE# 15-4, p. 22).

On appeal the petitioner raised a several issues including claims that the trial court erred by denying the special jury instruction and the motion for mistrial. (DE# 14-5, p. 2-37). On August 10, 2011 the appellate court affirmed his conviction and sentence. Navarro v. State, 93 So.2d 1039 (Fla. 3d DCA 2011). The petitioner did not seek further direct review.

On March 9, 2012 the petitioner filed a motion for post conviction relief. (DE# 14-7, p. 2-20). He contended that he was

denied effective assistance of counsel during the litigation of the motion to suppress. He alleged that counsel failed to adequately investigate the facts and law in presenting the motion to suppress. He argued that counsel failed to (1) argue that the officer's entry onto his covered porch was an illegal search; (2) argue that the officer's smell of marijuana was an illegal search due to his location on the covered porch; (3) argue that the petitioner's consent was the result of overwhelming show of police force; (4) argue that the officer's reasonable suspicion was based upon a tip from a confidential informant; and (5) argue that the officer's testimony was contrary to the facts. The State filed a response. (DE# 14-7, p. 22-28). The State argued that the motion should be denied because the record reflects that counsel filed a sufficient motion to suppress that was properly litigated. The State further contended that the petitioner's legal arguments were incorrect. The trial court denied the motion, stating that if the petitioner appealed the clerk was to transmit a copy of the order, motion and the State's response with all attachments. (DE# 14-7, p. 30). On August 29, 2012 the appellate court affirmed the denial of the motion. Navarro v. State, 96 So.3d 901 (Fla. 3d DCA 2012)(table). Mandate issued on September 24, 2012.

The petitioner filed the instant petition on October 9, 2012.[2] He raises three issues. His first claim is identical to the claim of ineffective assistance raised in his State motion for post conviction relief. His other claims are that the trial court abused its discretion in denying his request for a special jury instruction on the weight of the marijuana and denying his motion for mistrial based on alleged improper argument of the prosecutor.

---

[2] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

7

### III. Statute of Limitations and Exhaustion

The state properly concedes that the petition was filed timely and the all claims raised in the petition have been exhausted in state court.

### IV. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court

8

decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

The petitioner raises claims of ineffective assistance of counsel. The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id. In the context of a guilty plea, the second prong of the Strickland test requires a showing that but for counsel's errors, the movant would not have pleaded guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S.

9

52 (1985).

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

Combining AEDPA's habeas standard and Strickland's two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, a petitioner must show the state court "applied Strickland to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. Bell v. Cone, 535 U.S. 685, 699 (2002).

## V. Discussion
### A. Ineffective Assistance of Counsel

In his first claim the petitioner contends that counsel was ineffective in pursuing the motion to suppress. He argues that counsel failed to properly investigate the facts or present legal arguments in support of the motion to suppress. He presents five sub-claims within this claim. He claims that had counsel properly presented the motion that it would have been granted, resulting in the suppression of the only evidence of guilt.

This claim, along with its series of sub-claims, was raised in State court in the petitioner's motion for post conviction relief. Each of the sub-claims was denied by the trial court, ostensibly for the reasons presented in the State's response. The State argued that none of the petitioner's legal arguments were correct and that counsel performance was not deficient under the Strickland standard.

The State court's denial of this claim was not contrary to, or an unreasonable application of, controlling precedent. As reflected in the record, counsel filed a motion to suppress the search. He presented cogent and reasonable arguments in support of the motion to suppress. He argued that the police illegally detained the petitioner and his wife, that as a result of the detention the police were able to overcome their will to induce them to consent to search. He further argued that the consent was induced by threats by the police to arrest the petitioner's spouse after obtaining a warrant.

As recognized under the Strickland standard, counsel's performance is deficient if it is outside the wide range of professionally competent performance. As noted by the 11th Circuit "Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately." White v. Singletary, 972 F2d 1218, 1221 (11th Cir. 1992). "The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.' " Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir.1995) (en banc)(citations omitted). Here it cannot be said that counsel's performance was such that the adversarial process did not work adequately, that his performance was outside the range of professionally competent performance envisioned by the Strickland test. Therefore the trial court's properly denied this claim.

B. Trial Court Denial of Special Jury Instruction

In his second claim the petitioner contends that the trial court abused its discretion when it denied his special jury instruction. He argues that the denial of requested instruction violated his due process right to present a defense.

This claim was raised on direct appeal. The appellate court affirmed the conviction per curiam, without written opinion. This claim was properly denied and does not warrant relief.

The petitioner contends that the trial court should have instructed the jury that the weight of the marijuana seized should not include any additional water weight. He relied upon the Florida case of Cronin v. State, 470 So.2d 802 (4th DCA 1985) for his special instruction. In Cronin involved a case where the defendant was charged with trafficking in excess of 10,000 pounds of marijuana. The marijuana seized had been transported in bales on the deck of boat and had absorbed water during its transport and when at least on bale fell into the water. Cronin at 803. The defendant presented testimony that this adventitious[3] water made up approximately 420 of the more than 11,000 pounds of marijuana. Id. In that case the appellate court found it was error to deny the special requested jury instruction that the jury not consider the adventitious water weight. Id. at 804.

In the instant case there was no testimony that the seized marijuana contained any adventitious water. The petitioner testified he had watered the plants on the day they were seized and each plant had received a gallon of water. However there was also testimony that the plants were weighed without the pots or any soil

---

[3] The expert testified that adventitious water weight is comprised of the excess water that would not ordinarily be found in the plant.

12

and the total weight was over 60 pounds. Furthermore, pursuant to the petitioner's motion, the plants were weighed nearly a year later and the weight still substantially exceeded the 25 pound weight necessary for the trafficking charge.

The denial of a jury instruction will ordinarily not warrant federal habeas relief and a petitioner bears a heavy burden to show that the trial court's failure to give an instruction violated his rights. See Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992)(citing Cupp v. Naughten, 414 U.S. 141, 147 (1973) and Henderson v. Kibbe, 431 U.S. 145(1977). Based upon the facts of the instant case, which are distinguished from the facts of the Cronin case, the special jury instruction was not warranted. Since the instruction was not warranted the petitioner's due process right to present a defense was not infringed and the petitioner has not met his heavy burden to warrant relief on this claim. The State court's denial of this claim was proper.

C. Prosecutor's Comments in Closing Argument

In his third claim the petitioner contends that the trial court abused its discretion when it denied counsel's objection during the prosecutor's closing argument. He argues that he was denied due process when the prosecutor stated that "this is not the first time he's done this."

This claim was raised and rejected on direct appeal. The State court's denial of this claim was proper. A review of the transcript of the petitioner's trial testimony reveals that he admitted to growing the marijuana. He also tried to minimize his culpability by testifying that this was his first time growing marijuana. The prosecutor discussed this testimony in conjunction with his argument regarding the petitioner's credibility and the weight the

13

jury should give that testimony. The argument was proper comment upon the petitioner's credibility and not an imputation of other crimes committed by the petitioner.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). To obtain the relief of habeas corpus based upon prosecutorial misconduct, it must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181(1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643(1974)). Even if the prosecutor's comment could be found to be improper, it did not so infect the trial with unfairness as to result in a denial of due process. The petitioner admitted that he was growing marijuana, the State establish that the weight of the marijuana was sufficient to meet the trafficking weight of at least 25 pounds. It cannot be reasonably concluded that the prosecutor's comment so influenced the jury that the outcome was changed. This claim should be denied.

## Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a

certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, that no Certificate of Appealability issue and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 29th day of August, 2013.

UNITED STATES MAGISTRATE JUDGE

cc: Adolfo Navarro, pro se
    DC#M65358
    7944 Northwest 187th Terrace
    Miami, FL 32425

15

```
Nikole Hiciano, AAG
Office of the Attorney General
444 Brickell Ave., Suite 650
Miami, FL 33131
```